E-FILED
Thursday, 23 October, 2025  02:50:13 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>DERRICK BARBER,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 22-cr-30016 |

### OPINION

**COLLEEN R. LAWLESS, U.S. District Judge:**

Before the Court is Defendant Derrick Barber's Motion to Suppress. (Doc. 52).

Defendant's Motion is DENIED for the reasons that follow.

### I.    PROCEDURAL BACKGROUND

On February 8, 2023, a Grand Jury returned a two-count Superseding Indictment

against Barber. Count I of the Superseding Indictment was dismissed at the

Government's request. The remaining count charged Barber with distribution of heroin,

fentanyl, and cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). (Doc. 23). On May

1, 2025, Barber filed the instant motion to suppress evidence obtained from two separate

searches conducted by the Government on January 19, 2022. (Doc. 52). The Court held an

evidentiary hearing on the Motion.

### II.    FACTUAL BACKGROUND

On December 15, 2021, Springfield Police Department ("SPD") Officer Devin

Schluter obtained a search warrant permitting law enforcement to place a GPS tracker on

Barber's 2005 black Cadillac Escalade. In his affidavit in support of the warrant, Officer

Schluter outlined a "controlled buy," in which a confidential source (the "CS") purchased suspected heroin from Barber. Prior to the controlled buy, law enforcement officers searched the CS and found no contraband or money on his person. The officers then gave the CS pre-recorded official advanced funds and equipped the CS with a covert recording device. During the controlled buy, an officer observed Barber driving his black Escalade to meet with the CS. The CS also informed officers of his belief that Barber regularly travels to the Champaign-Urbana area in Illinois to obtain more heroin for distribution. The Affidavit did not provide any additional details regarding the CS's basis for that knowledge.

After the search warrant was issued, a GPS tracker was placed on Barber's Escalade and officers monitored the tracker data. On January 19, 2022, Officer Schluter surveilled Barber as he drove around Springfield, Illinois, in his Escalade. Officer Schluter saw Barber make a brief stop at a residence before driving his Escalade to meet with a subject in another vehicle. During this meeting Officer Schluter observed what he believed to be a hand-to-hand drug transaction between Barber and another person. Officer Schluter contacted SPD Officer Gino Maldonado, advised him of the hand-to-hand transaction, and asked Officer Maldonado to attempt to stop Barber for a traffic violation.

Officer Maldonado later stopped Barber for a suspected window tint violation, for failing to signal before a turn, and for an improper turn. Barber produced his driver's license and insurance, but his vehicle remained in drive. Officer Maldonado asked Barber to exit the vehicle. When Barber asked why he had to get out of the vehicle, Officer

Maldonado explained that in Illinois a driver is required to step out of a vehicle when instructed by a law enforcement officer. Barber then requested Officer Maldonado call a supervisor to the traffic stop. Officer Maldonado told Barber to place the vehicle in park and commanded him to get out of the vehicle. Barber refused and again asked Officer Maldonado to call a superior officer to the scene. Officer Maldonado said he would call a sergeant but told Barber to exit the vehicle while they waited. Barber refused.

One minute after the first request, Officer Maldonado advised Barber he was under arrest for resisting arrest. Barber became angry and reached his hand down toward the center floor area of the vehicle out of the officer's sight. At that point, Officer Maldonado grabbed Barber's left arm and told him to keep his hands where he could see them. Although Barber then stated that he would exit the vehicle, he did not make any effort to do so. Officer Maldonado pulled on Barber's arm while ordering him to get out of the vehicle, and Barber began yelling for help.

After more than ninety seconds after being told he was under arrest, Barber was removed from the vehicle by multiple officers. During a search incident to his arrest, officers found $747 in Barber's pants pockets. At the same time, a plastic sandwich bag fell out of Barber's pant leg. The baggie contained six individual smaller baggies of various illicit substances. Barber received traffic citations for illegal window tint, improper turn, and failure to signal 100 feet before a turn.

Officer Schluter used the drugs recovered from the traffic stop to establish probable cause in order to obtain a search warrant targeting Barber's apartment in Springfield, Illinois. Pursuant to the warrant, officers seized the following items from

Barber's apartment: paperwork in Barber's name, Dormin (a known cutting agent for heroin), approximately 10.6 grams of heroin/fentanyl, approximately 5.7 grams of crack cocaine, and $3,994 in cash.

## III.    DISCUSSION

Barber presents three arguments in support of the Motion to Suppress. First, he argues Officer Schluter's affidavit in support of the tracking-device search warrant failed to establish probable cause for its installation on Barber's vehicle, and thus all evidence derived from the tracking device should be suppressed. Second, Officer Maldonado did not have probable cause to arrest Barber. Finally, Officer Schluter's affidavit in support of the search warrant for the apartment failed to set forth any evidence tending to show a nexus between the criminal activity alleged in the affidavit and the place to be searched, so all evidence discovered during the execution of the deficient warrant should be suppressed.

### A. Tracking-Device Search Warrant

Barber argues that the CS's information about Barber's resupply trips was not sufficiently corroborated or reliable to establish probable cause for the search warrant. Additionally, he argues that the single controlled buy was not sufficient to establish probable cause for the warrant.

"A valid search warrant 'require[s] only three things': (1) an independent magistrate issuing it; (2) a showing of probable cause 'that the evidence sought will aid in a particular apprehension or conviction for a particular offense'; and (3) a particular description of 'the things to be seized, as well as the place to be searched.'" *United States*

*v. Harris*, 996 F.3d 451, 460 (7th Cir. 2021) (quoting *Dalia v. United States*, 441 U.S. 238, 255 (1979)). "Probable cause for issuance of a search warrant exists if there is 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* at 461 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The Seventh Circuit has explained that "[w]hen the information used to support a finding of probable cause is derived from a [CS]'s tip, the legitimacy of a probable cause determination turns on that [CS]'s reliability, veracity and basis of knowledge." *United States v. Haynes*, 882 F.3d 662, 665 (7th Cir. 2018) (quotation omitted). "When assessing an informant's credibility, an issuing judge must consider as a whole (1) the degree of police corroboration; (2) the informant's firsthand knowledge; (3) the detail provided; (4) the time between the reported events and the warrant application; and (5) whether the informant appeared before the judge." *Id.* (quotation omitted). A properly executed "controlled buy" by the informant is generally considered "a reliable indicator as to the presence of illegal drug activity." *Harris*, 996 F.3d at 461 (quotation omitted).

In *Haynes*, the Seventh Circuit determined that the totality of circumstances surrounding a CS's information and subsequent controlled buy was sufficient to establish probable cause. 882 F.3d at 665–66. In that case, the affidavit provided little information concerning the CS's reliability and basis of knowledge for his tip regarding the defendant's drug distribution. *Id.* But the Seventh Circuit noted that the properly executed controlled buy was sufficient to establish probable cause to issue a search warrant. *Id.* ("Most significantly, the deputies corroborated the [CS]'s story with their own investigation by conducting surveillance and executing a controlled buy.").

Here, even without considering the CS's information about the resupply trips, probable cause supported the issuance of the search warrant. The officers observed Barber drive his black Escalade when he met with the CS. And the officers followed similar procedures as in *Haynes* during the controlled buy. Specifically, they searched the CS before the buy, equipped him with a surveillance device, observed him during the buy, and recovered the suspected drugs from him after the controlled buy. Because the properly-executed controlled buy involved the Escalade—which was identified with particularity in the affidavit—there was probable cause to issue the search warrant.

**B. Search Incident to Arrest**

A search incident to an arrest allows law enforcement "to search for and seize any evidence on the arrestee's person to prevent concealment and preserve evidence for trial." *United States v. Thomas*, 512 F.3d 383, 387 (7th Cir. 2008). "Where there is a lawful custodial arrest, a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a reasonable search under that Amendment." *Id.*

Pursuant to 720 ILCS 5/31-1(a), "[a] person who knowingly resists arrest or obstructs the performance by one known to the person to be a peace officer . . . of any authorized act within his or her official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a) (cleaned up). Barber relies on *Abbott v. Sangamon County*, 705 F.3d 706 (7th Cir. 2013), for the proposition that merely arguing with an officer does not constitute obstructing or resisting arrest. But the Seventh Circuit acknowledged in that case that a defendant's repeated refusal to exit a vehicle may constitute obstruction under the

statute. *Abbott*, 705 F.3d at 722 (citing *People v. Ostrowski*, 394 Ill. App. 3d 82, 98 (2d Dist. 2009) ("Passive acts that impede an officer's ability to perform his duties . . . may also violate section 31-1(a).")). In fact, Illinois courts have repeatedly held that disobeying an officer's orders to exit a vehicle is sufficient alone to sustain a conviction for resisting arrest. *See, e.g., People v. Synnott*, 349 Ill. App. 3d 223, 226–28 (2d Dist. 2004); *People v. Shenault*, 2014 IL App (2d) 130211, ¶¶ 15–23 (collecting cases and concluding same); *People v. Coates*, 2025 IL App (4th) 231312, ¶ 45 ("The primary rationale for this rule is the concern for officer safety: it allows an officer to better observe the movements of the stopped person and permits the encounter to occur away from traffic hazards.").

Here, Barber went beyond merely arguing with Officer Maldonado. Officer Maldonado repeatedly asked Barber to exit the vehicle and explained to Barber that, under Illinois law, he was required to get out of the vehicle. Barber refused and responded that he would do so only if a supervisor was called to the scene. Officer Maldonado told Barber that he would call a superior, but again asked Barber to exit the vehicle while they waited for the supervisor to arrive.

Barber also relies on *People v. Sadder-Bey*, 2023 IL App (1st) 190027, to suggest that the timing of the request and a defendant's compliance are significant. *Id.* at ¶ 49. In that case, the defendant refused multiple commands to get out of his vehicle and argued with the officer. *Id.* at ¶ 41. But the Court did not rely on timing alone: The defendant was found not to have resisted arrest in part because his refusal was not accompanied by an act of resistance, such as going limp or fighting back. *Id.* at ¶ 43. And the defendant did not make any aggressive movements while refusing to comply. *Id.* For example, when

the officer grabbed the defendant, he did not fight back or otherwise resist the officer. *Id.* at ¶ 45. The defendant then indicated that he would comply and exited the vehicle on his own. *Id.* "At most, defendant argued with the officer but eventually cooperated." *Id.* at ¶ 49.

Here, after repeatedly asking Barber to exit the vehicle, Officer Maldonado informed Barber that he would be placed under arrest for resisting arrest. Barber became angry and reached his hand down towards the floor of the vehicle and out of Officer Maldonado's sight. At that point, Officer Maldonado grabbed Barber. Although Barber stated he would exit the vehicle after the physical altercation began, Barber made no effort to get out of the car on his own. Rather than submitting to Officer Maldonado, Barber struggled with him and attempted to remain in the vehicle. It was only after several officers arrived on the scene and assisted Officer Maldonado that Barber was ultimately removed from the vehicle.

As a result, although the timing of this approximately ninety-second altercation and the one in *Sadder-Bey* were similar, Barber's actions were far more aggressive and uncooperative than the *Sadder-Bey* defendant. The *Sadder-Bey* court placed significant emphasis on the defendant's compliance and lack of physical resistance. Here, Barber actively resisted and struggled with Officer Maldonado. Therefore, the Court finds the officers had probable cause to arrest Barber for his resistance, and the search incident to arrest was valid.

### C. Apartment Search Warrant

Barber argues that the affidavit in support of the search warrant for his apartment did not establish probable cause. Specifically, the affidavit provided no basis for concluding that the drug baggies recovered during the traffic stop originated from Barber's apartment or that any other evidence of a crime may be found there. The Government contends it is reasonable to believe evidence of a defendant's drug dealing would be found where that defendant resides.

Establishing probable cause for a search warrant "does not require direct evidence linking a crime to a particular place." *United States v. Anderson*, 450 F.3d 294, 303 (7th Cir. 2006). And the proposition that "evidence of drug dealing is likely to be found where the dealer lives" is a permissible inference for an issuing judge to make. *United States v. Scott*, 731 F.3d 659, 665 (7th Cir. 2013).

For example, in *Anderson*, the Seventh Circuit upheld the validity of a search warrant targeting the defendant's apartment. 450 F.3d at 303. In that case, the DEA arranged five controlled buys with the defendant. *Id.* at 297, 303. They also connected an apartment to the defendant through probation records, post office records, energy company records, and the management of the apartment complex. *Id.* at 303. As a result, the Seventh Circuit held that the magistrate judge had probable cause to issue the warrant. *Id.*

Here, the affidavit connected Barber to drug dealing based on the controlled buy, the surveillance that revealed movements consistent with drug dealing, and the numerous small and large baggies found during the traffic stop, in which their contents

tested positive for illicit drugs. The affidavit also connected Barber to the apartment through confidential source statements, surveillance of the parking garage, the registration of two vehicles under his name, and confirmation by staff from a local hotel. Therefore, the information contained in the affidavit was sufficient to establish probable cause for the search warrant.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Derrick Barber's Motion to Suppress (Doc. 52) is DENIED.

ENTER: October 23, 2025

_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE